### In re Guardianship of WILLIS.

[Cite as *In re Guardianship of Willis* (1991), 74 Ohio App.3d 554.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–298.

Decided June 13, 1991.

*David A. Belinky,* for appellant.

*Evans, St. Clair & Kelsey* and *J. Michael Evans,* for appellee.

McCormac, Judge.

Appellant, Nadine Willis, appeals from the judgment of the Franklin County Probate Court finding her incompetent and appointing appellee, Joyce Ann Provens, guardian of her person with specific authority to authorize the administration of psychotropic medication to appellant despite her objections. The facts of this case have been stipulated and, therefore, are not in controversy.

Appellant is a sixty-six-year-old woman with a twenty-year history of mental illness. Appellee is her daughter. Appellant's condition, which has been diagnosed as schizophrenia, is effectively managed through the use of psychotropic medication except during occasional periods when she refuses to take the medications. One such period occurred in late 1990 and led to appellant's involuntary hospitalization pursuant to R.C. Chapter 5122. During the hospitalization, appellant continued to refuse treatment, prompting appellee to file an application to be appointed guardian of the person of appellant, Nadine Willis.

Appellant opposed the application and counsel was appointed to represent her. The matter was referred to a referee of the probate court, who filed his report recommending that appellee's application be granted. The probate court adopted the referee's recommendation, over appellant's objection, expressly finding that appellant was an "incompetent person" within the meaning of R.C. 2111.01 and appointing appellee as guardian with specific authority to authorize appropriate medical care.

Appellant appeals the probate court's judgment and raises the following assignments of error:

"I. The trial court erred by ordering and approving the application of guardianship solely to grant the guardian authority to administer psychotropic medication to the ward against her will as said order violated the ward's right to refuse psychotropic medication.

"II. The court erred in granting the application of guardianship by adhering to the 'best interest' standard when the court should have considered whether the ward presented a present physical 'danger to herself or others' when granting the guardianship."

Appellant's assignments of error are interrelated and will be discussed together. Appellant argues that, under the circumstances of this case, the trial court's use of a "best interest" standard instead of a "danger to herself or others" standard amounted to a denial of appellant's right to due process. Appellant contends that she has a constitutional right to refuse the adminis-

tration of psychotropic medication regardless of her competency so long as she does not present a risk of physical harm to herself or others.

Appellant does not take issue with the finding of incompetency entered in conjunction with her original December 19, 1990 commitment to Riverside Hospital pursuant to R.C. Chapter 5122. Apparently, she concedes the court's authority and the constitutional regularity of the prior competency proceeding; yet, she maintains, regardless of her competency, that she can refuse to take psychotropic medications.

R.C. 2111.02(C) provides that, prior to the appointment of a guardian, the potential ward must be given notice and an opportunity to be heard. The ward has the right to counsel and the applicant must prove incompetency by clear and convincing evidence. R.C. 2111.02(B)(1) allows the probate court to appoint a limited guardian if it is in the "best interest" of the incompetent. Continuing, R.C. Chapter 2111 imposes an absolute duty on the guardian to provide appropriate medical care to the incompetent. Finally, R.C. 2111.50(C) addresses the standard to be applied by the probate court as follows:

"Except for the powers specified in division (D) of this section, all powers of the probate court that are specified in this chapter and that relate either to any person whom it has found to be an incompetent or a minor subject to guardianship and for whom it has appointed a guardian and all powers of a guardian that relate to his ward or guardianship as described in division (A)(2) of this section, shall be exercised in the best interest, as determined in the court's or guardian's judgment * * *."

 The Revised Code does permit a mental health patient to refuse certain specific types of treatment. R.C. 5122.271 provides under certain circumstances that the patient must be allowed to make an informed intelligent decision. However, if the patient is declared an incompetent, then she is presumed unable to make an informed decision and the guardian and/or court is authorized to make it for her. R.C. 5122.271(E) does provide a standard similar to the one advanced by appellant, but provides that major adverse intervention can be administered only when the incompetent " * * * continues to engage in behavior destructive to himself or others * * *." Appellant does not offer, nor has our research revealed, any other applicable provision which indicates that a standard other than best interest is to be applied. Appellant does not argue that psychotropic drugs constitute major adverse intervention and, therefore, it is apparent that R.C. 5122.271(E) is inapplicable. Thus, the best interest of the ward should be the determinative issue when deciding if an incompetent should be forced to take psychotropic medications.

■ In support of her position, appellant cites several federal cases, including *Washington v. Harper* (1990), 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178, for the proposition that a person must present serious physical harm to himself or others before psychotropic drugs may be administered against that person's will. In *Washington,* the Supreme Court upheld a state regulatory scheme, whereby psychotropic drugs could be forcibly administered to a prison inmate if the inmate was found to be dangerous to himself or others. The court held that, while the state policy did create a liberty interest in the prisoner to refuse treatment, given requirements of the prison environment, the regulations were reasonably related to the state's interest in assuring the health of the inmate and the safety of prison personnel.

*Washington* is distinguishable in that appellant was first declared incompetent before the court approved the forcible administration of drugs. A trial court twice addressed the issue of appellant's competency, first in the R.C. Chapter 5122 proceeding and again as part of the application for guardianship. Both times the court found appellant to be incompetent. R.C. 2111.01(D) defines "incompetent" as:

"(D) 'Incompetent' means any person who is so mentally impaired as a result of a mental or physical illness or disability, or mental retardation, or as a result of chronic substance abuse, that he is incapable of taking proper care of himself or his property or fails to provide for his family or other persons for whom he is charged by law to provide, or any person confined to a penal institution within this state."

During both of the competency proceedings, appellant was afforded procedural due process protection superior to that afforded the respondent in *Washington.* In fact, respondent's primary contention in *Washington* was that, in order to adequately protect his due process rights, he should have first been declared incompetent and only thereafter could he be forced to take psychotropic medications. The Supreme Court answered this contention by noting the unique governmental interest associated with prison regulation and safety. Justice Blackmun went even further in his concurring opinion and squarely addressed the issue by stating:

"* * * Much of the difficulty will be lessened if, in any appropriate case, the mentally ill patient is formally committed. This on occasion may seem to be a bother or a nuisance, but it is a move that would be protective for all concerned * * *." *Id.,* 494 U.S. at 236, 110 S.Ct. at 1044, 108 L.Ed.2d at 208.

■ R.C. 2111.02(C)(3) provides that before a guardian is appointed the applicant must prove incompetency by clear and convincing evidence. The evidence before the probate court included a medical report from appellant's treating physician, a second evaluation conducted by David Tennenbaum,

Ph.D., an expert employed on appellant's behalf, and the testimony of appellee. Taken together, they show that appellant has a long history of paranoid delusions that, at the very least, border on schizophrenia when appellant does not take her medication. Appellant has been known to take long walks carrying large sums of money in the middle of the night. When not medicated, she engages in rather bizarre thoughts and actions which are a matter of record. There was ample evidence to support the probate court's conclusion that appellant could no longer handle her affairs. Importantly, appellant was not only found to be incompetent in the general sense, but she was also found to be unable to make an intelligent decision concerning the benefits and detriments of use of the medicine. This finding is supported by the evidence and it serves to distinguish further any authority upon which appellant relies.

The bottom line is that appellant suffers from a manageable form of mental illness. On two occasions, the court has concluded that she is incapable of making an informed decision regarding her own physical and emotional well-being. If appellant is permitted to continue to refuse medication, her family will most probably disintegrate. Medical science has the tools to permit appellant to lead a relatively normal life and her family appears to love and support her. Her present condition makes it impossible for her to understand the implications of her decision. Given the relatively minor invasion of her privacy and the much greater benefits gained by the invasion, it is in appellant's best interest to have a guardian appointed with the power to authorize the forced administration of psychotropic drugs.

Ohio statutory law delineates the best interest standard to be applied to the appointment decision. Appellant's cited authority is distinguishable on the basis that a prior judicial determination of incompetency has been made in this action. A holding that appellant must first present a danger to herself or others before ordering forced medication is not constitutionally required. Appellant has been afforded notice and an opportunity to be heard at every juncture and the invasion of her privacy is slight compared to the probable benefits.

Appellant's assignments of error are overruled, and the judgment of the probate court is affirmed.

*Judgment affirmed.*

JOHN C. YOUNG and PETREE, JJ., concur.