OPINION.
Applicant-appellant, the Hamilton County Community Mental Health Board ("Board"), has appealed the judgment of the Hamilton County Court of Common Pleas, Probate Division, denying the Board's application to administer psychotropic medication to Jeffrey Steele without his consent. Steele was involuntarily committed to the Pauline Warfield Lewis Center, in Cincinnati, and his care is the responsibility of the Board. Despite the recommendation of his treating physicians, Steele refuses to take medication that his physicians believe will improve his mental condition.
The trial court denied the Board's application, stating, "This court will only authorize the forced medication of psychotropic drugs upon a showing that the patient has a serious mental illness, is a danger to himself or others within the institution, and the treatment is in the patient's medical interest." The trial court held that the Board had failed to prove that Steele was a "grave or immediate risk of danger" to himself or others.
On appeal, the Board argues that the trial court should have granted its motion to force Steele to be medicated, when the Board had established that Steele, because of his mental illness, was not capable of evaluating the benefits and risks of medication and therefore could not give "informed consent" to the procedure, and when the Board had established by medical testimony that medication was in Steele's best interest. The Board contends that the trial court erred in further requiring the Board to prove that Steele was dangerous to himself or others.
We agree that the trial court erred in holding that the Board was required to show dangerousness, in addition to a lack of capacity to make informed medical decisions and the benefit of the forced medication of Steele, before the Board was entitled to make the decision whether to force Steele to submit to medication. For that reason, we reverse the judgment of the trial court and enter judgment in favor of the Board on its application.
The trial court accepted the findings of fact made by the magistrate, overruling the Board's objections to the magistrate's decision. Two of those findings of fact are critical to our resolution of the Board's appeal. First, the trial court found that Steele "lack[ed] the capacity to withhold or to give informed consent for medical purposes." Second, the court found that Steele had been involuntarily committed because he suffered from a serious mental illness.
The Supreme Court of Ohio has relied on the ability or inability of a patient to make informed decisions about medication when determining whether the patient should be forcibly medicated. In In re Milton (1987), 29 Ohio St.3d 20, 505 N.E.2d 255, the court addressed the issue of the right of a voluntarily institutionalized mental patient to refuse treatment for cancer based on her religious beliefs in faith healing. Her treating physician testified that she would die without the recommended treatment. The court emphasized that a patient's commitment, voluntary or involuntary, should not deprive the patient of the right to receive information about treatment and to make an informed decision to accept or refuse treatment. Commitment, the court reasoned, relates to a patient's dangerousness, not his competence to make decisions. Accordingly, in the absence of a showing of incompetence, a patient cannot be forced to undergo treatment. See Milton, 29 Ohio St.3d at 26, 505 N.E.2d at 260.
Lack of competence or capacity to make decisions is the touchstone for ordering forced medication of a patient. See In reMiller (1996), 109 Ohio App.3d 455, 672 N.E.2d 675; In re Willis
(1991), 74 Ohio App.3d 554, 599 N.E.2d 745; In re McCarty (Sept. 26, 1996), Union App. No. 14-96-21, unreported. In Miller, the hospital staff, after evaluating Miller, an involuntarily committed patient, determined that he was incompetent to give or withhold informed consent for treatment. After a hearing, the hospital determined that Miller was incompetent to consent or to withhold consent to medical treatment, and that he could be forcibly medicated. The probate court accepted the factual determinations of the hospital and upheld the forced medication. Significantly, there was no mention of whether Miller was dangerous to himself or others. See Miller,109 Ohio App.3d at 457, 672 N.E.2d at 676.
In Willis, the trial court granted the hospital's request to medicate Willis without her consent, since she did not have the capacity to give or withhold informed consent, and because medication was in her best interest. On appeal, Willis's representative argued that the trial court erred in using a "best interest" test instead of determining whether Willis was a danger to herself or others. The court stated that Willis "contends that she has a constitutional right to refuse the administration of psychotropic medication regardless of her competency so long as she does not present a risk of physical harm to herself orothers." See Willis, 74 Ohio App.3d at 556-557,599 N.E.2d at 746 (emphasis added). However, the court rejected that argument and held that a person determined to be incompetent can be forced to accept medication even if that person demonstrates no threat of dangerousness.
In Willis, the patient had already been declared incompetent pursuant to the provisions of R.C. Chapter 2111 and had had a guardian appointed. The court stated that if the guardian believed that the medication was in the ward's best interest, no other showing, particularly one of dangerousness, was required. See id. Although the record before us does not demonstrate whether a guardian has been appointed for Steele, the lack of a guardian does not detract from the application of the Willis
reasoning in determining whether the patient here may be forced to accept medication.
The definition of incompetent pursuant to R.C. Chapter 2111 includes "any person who is so mentally impaired as a result of a mental or physical illness or disability, or mental retardation, * * * that the person is incapable of taking proper care of the person's self." R.C. 2111.02(D). This definition mirrors the definition of a person subject to involuntary commitment: that is, a person who, because of mental illness, is "unable to provide for and is not providing for the person's basic physical needs." See R.C. 5122.01(B)(3). Here, Steele has been involuntarily committed because of a serious mental illness pursuant to R.C. 5122.01
(B)(3).
Therefore, we hold that an applicant need not prove that an involuntarily committeed patient poses a risk of danger to himself or others to obtain an order to forcibly medicate the patient, when the applicant has otherwise shown that medication is in the patient's best interest, and when the patient lacks the capacity to give or withhold informed consent for such treatment.
At the hearing before the magistrate, all of the physicians who had evaluated Steele testified that he lacked the capacity to make an intelligent, informed decision about his medication. This evidence, combined with the findings of the doctors in connection with Steele's initial commitment, was all that was necessary to obtain an order from the probate court allowing the forced medication of Steele, if that medication was in his best interest.
Even if dangerousness were a criterion for forced medication, that element is present in this case. When the Board made its application for forced medication of Steele, Steele had already been determined to pose a risk of danger to himself and others under the statutory requirements for involuntary commitment.
R.C. 5122.01(B) permits commitment of a mentally ill person when that person meets one or more of the following criteria:
 (1) Represents a substantial risk of physical harm to self as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;
 (2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;
 (3) Represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community; or
 (4) Would benefit from treatment in a hospital for his mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or himself.
 Steele was first admitted, involuntarily, to the psychiatric ward at University Hospital in Cincinnati. Dr. R. Gregory Rohs, M.D., Chief Clinical Officer of University Hospital, evaluated Steele and specifically found that the third of the four criteria listed above was present, requiring Steele's involuntary commitment. Thus, Dr. Rohs found that Steele "[r]epresent[ed] a substantial and immediate risk of serious physical impairment or injury to [him]self."
When Steele's condition did not improve at University Hospital, the Board sought his continued commitment at the Pauline Warfield Lewis Center. Dr. Michael Newton, Steele's attending physician, evaluated Steele and found that the second of the four criteria was met: that is, that Steele "represent[ed] a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior [or] evidence of recent threats that place[d] another in reasonable fear of violent behavior and serious physical harm." Steele's commitment was therefore continued.
Even if a patient's "dangerousness" is a requirement when the patient has been shown to lack the capacity to make medical decisions for himself, that element was established here by Steele's involuntary commitment. There is no support for the trial court's added requirement that an involuntarily committed patient pose a "grave and immediate" danger before that patient, who lacks the capacity to give or withhold consent to treatment, may be forcibly medicated, if that medication is in the patient's best interest.
The record establishes that the Board made the requisite showing of the propriety of forced medication, and we hold that the trial court therefore erred in denying its application. The trial court's judgment is accordingly reversed, and final judgment is hereby entered in the Board's favor on its application.
Judgment accordingly.
Doan, P.J., and Winkler, J., concur.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Opinion.