OPINION OF THE COURT
David B. Saxe, J.
Court-appointed guardians over the personal needs of incapacitated individuals are sometimes confronted with difficult decisions and problems in the course of arranging the life of the incapacitated person (IP). This motion raises the important question of the extent of the powers of a guardian to hospitalize an adjudicated incapacitated person if a need to administer psychiatric medication is perceived.
In the case of Mrs. Farbstein, it was shown that although she generally appears and sounds quite lucid, she suffers from a degenerative dementia, and that a guardian was needed to make decisions regarding her personal needs. The appointed guardian was directed to, inter alla, arrange for 24-hour home care in Mrs. Farbstein’s apartment. The guardian is also authorized by the order of appointment to consent to or refuse routine and major medical treatment without Mrs. Farbstein’s consent. By definition, "major medical treatment” includes the administration of psychotropic medication.
Upon her appointment in this case, the guardian for Mrs. Farbstein arranged to have Mrs. Farbstein discharged from the hospital with around-the-clock home care attendants. However, Mrs. Farbstein has refused to willingly accept their assistance. She does not believe herself to need assistance, and she repeatedly forgets who they are and how they came to be in her apartment. This 88-year-old woman has pushed one home care companion out of her apartment, has refused the assistance of another (and spilled hot water on herself in the process), and has pushed and bit another. She appears highly agitated at these times.
The guardian consulted with a psychiatrist who had examined Mrs. Farbstein when she was in Beth Israel Medical Center prior to the determination of the Mental Hygiene Law article 81 proceeding. That psychiatrist suggested to the guardian that she bring Mrs. Farbstein to the Beth Israel emergency room so she could be admitted and evaluated regarding the administration of Haldol. However, Mrs. Farbstein refuses to go voluntarily, and the New York City Police Department, when called upon to assist EMS in taking Mrs. Farbstein to the hospital, indicated that they could not properly force Mrs. Farbstein to the hospital against her will.
*28 The guardian is in a difficult position. She has been directed to maintain 24-hour home care workers in attendance, but she will soon be unable to find a companion willing to stay with Mrs. Farbstein under the conditions presented. She is authorized to consent to the administration of Haldol, but is unable to convey Mrs. Farbstein against her wishes to be evaluated for such medication without assistance. Must she, as the police department suggests, proceed under article 9 of the Mental Hygiene Law in order to get Mrs. Farbstein into the hospital?
I start with reference to Mental Hygiene Law § 81.22 (b) (1):
"(b) No guardian may:
"(1) consent to the voluntary formal or informal admission of the incapacitated person to a mental hygiene facility under article nine or fifteen of this chapter.”
Since article 15 applies to the mentally retarded, article 9 is the only alternative to be examined here.
Section 9.03 of the Mental Hygiene Law provides in pertinent part that "Unless otherwise specifically provided for by statute, a mentally ill person shall be admitted to a hospital as an in-patient only pursuant to the provisions of this article.” Under article 9, a mentally ill person may be admitted to a hospital for care and treatment as a formal voluntary admission pursuant to section 9.13 or by an informal admission procedure (Mental Hygiene Law § 9.15); however, as section 81.22 (b) (1) makes clear, both options are unavailable to a guardian of an unwilling incapacitated person. A person may also be involuntarily admitted, upon certification, if the person poses a real and present threat of substantial harm to herself or others (Mental Hygiene Law § 9.37). Finally, emergency procedures are set out in sections 9.39 through 9.45.
The guardian wonders whether it is necessary for her to go to the trouble of this certification process in order to get Mrs. Farbstein to the hospital, just so they may evaluate the appropriateness of prescribing Haldol. The guardian suggests that since Mrs. Farbstein’s mental status has already been evaluated and determined under article 81, the process of "involuntary commitment” to a mental health facility for care and treatment does not precisely describe the brief hospital stay for a limited and defined purpose which is needed under the circumstances.
Is a guardian appointed under article 81 for the personal needs of an incapacitated person authorized to have the *29 IP admitted to a hospital, against her will, for a stay of several days for evaluation as to appropriate psychotropic medication? Can such an admission be distinguished from an involuntary admission under article 9?
The Legislature’s enactment of Mental Hygiene Law article 81 was grounded in the recognition that the former Mental Hygiene Law provisions regarding appointment of committees and conservators frequently resulted in an excessive deprivation of rights to the incapacitated person. Its stated intent was to satisfy the needs of an incapacitated person "in a manner tailored to the individual needs of that person, which takes into account the personal wishes, preferences and desires of the person, and which aifords the person the greatest amount of independence and self-determination and participation in all the decisions affecting such person’s life” (Mental Hygiene Law § 81.01). The statute authorizes the "least restrictive form of intervention” for problems presented (Mental Hygiene Law § 81.01).
Although it has been suggested by the guardian that article 81 supersedes article 9, nothing vitiating the need for the procedures set forth in article 9 in the case of an adjudicated IP appears in either statute. Indeed, in its provisions regarding involuntary admission to a mental health facility, article 9 explicitly provides that a committee may execute the application for admission (Mental Hygiene Law § 9.27 [b] [3]), which indicates that article 9 was certainly not superseded by former article 78.
I find nothing in the Mental Hygiene Law permitting a guardian to authorize the hospitalization of a mentally ill IP for evaluation for administration of psychiatric medication. Moreover, given the emphasis in article 81 on protecting the rights of incapacitated persons, and its language directing a guardian to act with deference to the wishes of the IP (see, Mental Hygiene Law § 81.20 [a] [7]; § 81.22 [a] [8]), any protections given the mentally ill by the provisions of article 9 should not be avoided by the appointment of a guardian.
I therefore conclude that the order sought by the guardian, that the New York City Police Department be directed to assist in transporting the IP to the hospital against her wishes, upon the guardian’s determination that a psychiatric reevaluation is necessary, must be denied.