*381 OPINION OF THE COURT
Colleen D. Duffy, J.
On April 14, 2010, the Attorney General of the State of New York (Attorney General or the State) filed a petition contending that respondent Maurice G. is a detained sex offender who has a mental abnormality, as that term is defined in Mental Hygiene Law, article 10, § 10.03, such that respondent should be confined or supervised by the Office of Mental Health (OMH) once his prison sentence is completed.
On March 7, 2011, respondent filed a motion to dismiss the petition contending that, as he is now serving an additional period of incarceration for violating the terms of his parole with respect to the conviction at issue and is not eligible again for parole until August 16, 2013, the petition should be dismissed: (1) for failure to state a cause of action; (2) for lack of subject matter jurisdiction because there is no ripe controversy; and (3) for violation of respondent’s due process rights. (Mem of law in support of motion to dismiss at 1.) Respondent also requests a summary determination dismissing the petition pursuant to CPLR 409 (b). (Id.)
For all of the reasons set forth below, the court grants respondent’s motion to dismiss for lack of subject matter jurisdiction because the relief sought by petitioner — civil management for respondent — is too remote; it could not be granted even if the jury were to find that respondent now suffers from a mental abnormality as respondent will be penally incarcerated until 2013.
Moreover, the condition precedent for article 10 civil management is a jury determination of the mental condition of respondent at the time civil management is necessary. Here, there can be no immediate consequence to any determination today that respondent should be subject to the strictures of civil management as he currently cannot be civilly managed.
Any such determination today as to respondent’s mental condition would be not only speculative and/or hypothetical as to what the respondent’s mental condition will be at the time he could be subject to civil management (when he is about to be released into the community), it also would be inconsistent with the intent and requirements of the statute. Accordingly, as any determination in this proceeding would have no immediate consequence and would only be hypothetical and speculative (as well as inconsistent with the statute), the matter is dismissed for lack of subject matter jurisdiction.
*382 In light of this court’s dismissal of the proceeding on these grounds, the court need not reach the merits of the petition.
I. Procedural History
On March 19, 2009, respondent pleaded guilty to sexual abuse in the first degree (Penal Law § 130.65 [1] [contact by forcible compulsion]) and on April 9, 2009, was sentenced to a determinate term of incarceration of two years in state prison, with three years’ postrelease supervision.
Respondent was due to be released from incarceration on April 17, 2010.
On April 14, 2010, the State filed an order to show cause and verified petition seeking a determination that respondent is a detained sex offender in need of civil management pursuant to article 10 of the Mental Hygiene Law and an order directing that respondent be detained pending a determination of the matter.
On April 23, 2010, the Honorable Michael A. Gross, Acting Supreme Court Justice, held a probable cause hearing and found that probable cause exists to believe that respondent is a detained sex offender requiring civil management pursuant to Mental Hygiene Law § 10.06 (k). The court further found that respondent would be a danger to society if he were released pending trial, and ordered that he be committed to a secure treatment facility, once his incarceration was completed, pending trial on the petition.
Respondent was thereafter transferred from the custody of the New York State Department of Correctional Services (DOCS) to the Central New York Psychiatric Center (CNYPC) on or about July 30, 2010.
While at CNYPC, respondent was criminally charged with harassment in the second degree (Penal Law § 240.26), stemming from an altercation and assault incident that occurred there, and, on December 15, 2010, respondent was convicted of that charge, after a bench trial. Respondent was sentenced to serve 15 days in Oneida County Correctional Facility.
As a result of that conviction, the Division of Parole (DOP) filed a violation against respondent contending that he violated the terms of his postrelease supervision, and, on January 10, 2011, a violation hearing was held before Administrative Law Judge David M. Stanton, in Oneida County.
At the hearing, respondent admitted the violation in that he failed to complete the sex offender program at CNYPC and he *383 made threats against a staff member at CNYPC. On January 14, 2011, DOP revoked respondent’s release and affirmed Judge Stanton’s recommendation that respondent be incarcerated for the remainder of the entire period that was to have been his postrelease supervision — an additional period of incarceration of two years, seven months and 15 days. Respondent was returned to the custody of DOCS to serve that time. Respondent’s earliest release date is now August 16, 2013.
Respondent contends that the article 10 petition now is unripe, as his anticipated release date on the sex offense underlying his prison sentence is not until August of 2013 and article 10 requires that a sex offender be nearing an “anticipated release date” before a petition may be filed against him. According to respondent, this lack of ripeness requires dismissal pursuant to CPLR 3211 (a) (2). Respondent also contends that the change in respondent’s release date destroys the State’s cause of action, requiring dismissal for failure to state a cause of action under CPLR 3211 (a) (7), and that adjudicating this petition at this time for civil management would violate respondent’s substantive and procedural due process rights under the New York State and United States Constitutions. Respondent also contends that there is no possible interpretation of the evidence by which the State can prove that respondent needs civil management and seeks a summary determination dismissing this matter under CPLR 409 (b).
For the reasons discussed below, respondent’s motion to dismiss is granted and the petition is dismissed for lack of subject matter jurisdiction, without prejudice to the State to file a new petition at such time as subject matter jurisdiction exists.
II. The Statutory Framework of Article 10
In 2007, the New York State Legislature passed the Sex Offender Management and Treatment Act (SOMTA), which, among other things, includes article 10 of the Mental Hygiene Law, with the stated goal of addressing the danger to society posed by recidivist sex offenders. (Mental Hygiene Law § 10.01 [a].) The act was signed into law by then-Governor Eliot Spitzer on March 14, 2007, and became effective April 13, 2007.
Determining that some sex offenders have mental abnormalities that predispose them to engage in repeated sex offenses, the Legislature enacted SOMTA which provides that a person who is determined to be a detained sex offender with a mental abnormality, as those terms are defined in section 10.03 (g) and *384 (i),[1] would be subject to civil management after that person had served his or her criminal sentence. (Mental- Hygiene Law § 10.01 [b]-[g].) Civil management may take the form of either civil confinement in a secure treatment facility or strict and intensive supervision (SIST). (Mental Hygiene Law § 10.01 [b], [c] , [d]; § 10.07 [f].)
The notice requirements of article 10 provide that, when a sex offender is nearing an anticipated reléase date from incarceration or detention, the agency that is responsible for supervising the respondent at that point in time (the “agency with jurisdiction”)[2] must give notice to the State of that release date. (Mental Hygiene Law § 10.05 [b]; § 10.03 [a].)[3]
SOMTA provides that, within a specified time frame, upon the filing of a petition seeking a determination that a respondent is a detained sex offender requiring civil management, either a Supreme or County Court judge shall hold a probable cause hearing to determine whether there is probable cause for such a determination. (Mental Hygiene Law § 10.06 [g]-[k].)
If the court determines that such probable cause exists, that matter is held over for trial before a 12-person jury, or a judge if the respondent in that case waives a trial by jury. The petitioner (the State of New York through the Office of the Attorney General) carries the burden of proving that the respondent in the matter is a detained sex offender who has a mental abnormality by clear and convincing evidence. (Mental Hygiene Law § 10.07 [d] .)
Pursuant to SOMTA, in order to be subject to civil management as set forth in Mental Hygiene Law § 10.01 et seq., the person must have been convicted of a sex offense, as defined in article 10. (Mental Hygiene Law § 10.03 [p].)[4]
*385 III. Legislative Intent* **[5]
New York is one of 18 states, along with the District of Columbia and the federal government, to have enacted civil confinement statutes such as SOMTA with the intent of addressing “a compelling need ... to protect residents of this state from sex criminals whose recidivism is predictable and uncontrollable.” (Governor’s Program Bill Mem, Bill Jacket, L 2007, ch 7, at 10; see e.g. Mental Hygiene Law § 10.01 [a], [b], [c], [e], [f].)
The Legislature, in enacting SOMTA, noted that SOMTA establishes comprehensive reforms to enhance public safety by allowing the State to manage sex offenders upon the expiration of their criminal sentences (incarceration or supervision) or detention through civil confinement or strict and intensive supervision. (Governor’s Program Bill Mem, Bill Jacket, L 2007, ch 7, at 5.) The Legislature noted that there is a small group of sex offenders who, because of a mental abnormality, cannot control their sexually violent behavior. Accordingly, SOMTA was enacted to mandate treatment as well as confinement or strict and intensive supervision for sex offenders who were about to be released back into the community from incarceration or detention depending upon their level of risk. (Id. at 10.)
IV Relevant Article 10 Jurisdictional Provisions
Section 10.03 (g) and (m) set forth two specific definitions in the Mental Hygiene Law relevant to this court’s determination of the lack of subject matter jurisdiction in this case[6] and provide, in relevant part, as follows:
A “detained sex offender” is defined as
*386 “a person who is in the care, custody, control, or supervision of an agency with jurisdiction, with respect to a sex offense or designated felony, in that the person is either:
“(1) a person who stands convicted of a sex offense as defined in subdivision (p) of this section, and is currently serving a sentence for, or subject to supervision by the division of parole, whether on parole or on post-release supervision, for such offense or for a related offense; . . . [or]
“(6) a person who has been determined to be a sex offender requiring civil management pursuant to this article.” (Mental Hygiene Law § 10.03 [g] [1], [relevant portions].)
“Release” and “released” mean “release, conditional release or discharge from confinement, from supervision by the division of parole, or from an order of observation, commitment, recommitment or retention.” (Mental Hygiene Law § 10.03 [m].)
The purpose, intent, procedures (and the typical protocol of the petitioner in commencing petitions) pursuant to article 10 all show that civil management proceedings are and should be instituted in temporal proximity to the end of a sex offender’s detention or incarceration. (Matter of State of New York v Rashid, 16 NY3d 1, 17 [2010] [Legislature intended to “create a special set of procedures ... to deal with the civil management of mentally ill sex offenders who are completing their prison terms”]; State of New York ex rel. K.S. v Superintendent, Wende Corr. Facility, Sup Ct, Broome County, 2010, index No. 2608-2010, at 9.)
The reasons for that are clear — article 10 was designed to protect the community from recidivist sex offenders by providing a civil management scheme for those who are about to go back into the community (either release from prison or detention), providing civil confinement for the most dangerous offenders and strict and intensive supervision by the DOP for others. (Rashid, 16 NY3d at 5-6, 15-16; K.S. at 9.)
V Discussion
A. The Proceeding Lacks Subject Matter Jurisdiction
For the reasons set forth below, the petition against respondent must be dismissed for lack of subject matter jurisdiction.
Subject matter jurisdiction is the power of a court to hear a particular type of case — whether that power be constitutionally *387 or statutorily granted. (Matter of Ballard v HSBC Bank USA, 6 NY3d 658, 663 [2006]; Matter of Fry v Village of Tarrytown, 89 NY2d 714, 718 [1997].) Without subject matter jurisdiction, the court has no power to hear a case. (Morrison v Budget Rent A Car Sys., 230 AD2d 253, 258-259 [2d Dept 1997]; Ballard, 6 NY3d at 663.)
In New York, subject matter jurisdiction requires that the matter be ripe, to wit, an actual controversy in a pending case. (Matter of David C., 69 NY2d 796, 798 [1987].) New York trial courts cannot issue advisory opinions. (Simon v Nortrax N.E., LLC, 44 AD3d 1027, 1027 [2d Dept 2007]; County of Monroe v City of Rochester, 39 AD3d 1272, 1272 [4th Dept 2007]; State of New York v Myers, 22 Misc 3d 809, 818 [Sup Ct, Albany County 2008].)
Indeed, an action must be dismissed for lack of subject matter jurisdiction if the issue presented involves a future event beyond the control of the parties which may never occur or if the issue has been rendered moot by a change in circumstances since the action was initially brought. (Cuomo v Long Is. Light. Co., 71 NY2d 349, 354 [1988]; Schultz v City of Port Jervis, 242 AD2d 699, 700 [2d Dept 1997] [complaint, alleging only hypothetical future controversy, not ripe for adjudication, dismissed]; Matter of Crumpley v Wack, 212 AD2d 299, 303 [1st Dept 1995]; Matter of Gold-Greenberger v Human Resources Admin, of City of N.Y., 77 NY2d 973, 974 [1991].)[7]
*388 The judgment sought also must have an immediate consequence to the rights of the parties. (Crumpley, 212 AD2d at 303; Matter of Sherry Lehmann, Inc. v New York State Liq. Auth., 160 AD2d 538, 539 [1st Dept 1990].)
Moreover, unlike a pleading defect, which may be waived by the parties, subject matter jurisdiction is not curable, may not be waived, and may be raised at any time. (See e.g. Morrison, 230 AD2d at 260; see also Siegel, NY Prac § 8, at 9-10, citing Robinson v Oceanic Steam Nav. Co., 112 NY 315, 324 [1889]; Matter of Baltimore Mail S. S. Co. v Fawcett, 269 NY 379, 388 [1936] [defendant may raise subject matter jurisdiction objection at any stage], cert denied 298 US 675 [1936].)* ******[8]
Although there is no dispute that a ripe controversy existed at the time that the article 10 petition was filed in this case, that ripeness must exist throughout the case.[9] Here it does not. At the time the petition was filed, petitioner sought a determination that respondent should be subject to civil management *389 through either civil commitment or strict and intensive supervision.
Now no such relief is available. If the petition were to be litigated today, because respondent will be incarcerated until August of 2013, any finding today that respondent is a detained sex offender who now suffers from a mental abnormality can have no consequence. As respondent now is and will be serving a criminal sentence of incarceration for more than two more years, neither civil commitment in a secure facility nor strict and intensive supervision in the community is possible.
In addition, no subject matter jurisdiction can exist in a trial today as article 10 requires an evaluation of respondent’s current mental condition as the condition precedent to subject him to civil management. The current mental status of a respondent is the determinative factor as to whether such respondent is subject to the civil management scheme of SOMTA, not the mental condition of such person last year or when such person committed the offense at issue, but rather when civil management (if respondent is deemed to be suffering from a “mental abnormality”) is necessary and possible, to wit, upon respondent’s imminent release to the community from incarceration or detention. (K.S. at 9 [article 10 contemplates that determination of mental abnormality be made at or very near time offender will be released from incarceration]; State of New York v J.M., Sup Ct, Suffolk County, 2007, index No. 28701 [statutory scheme requires prompt evaluation of mental condition as condition precedent to filing for civil confinement or modification of person subject to SIST].)
Thus, any finding today is, at best, only speculative as to the actual relevant determination: “What will be Respondent’s mental condition when he has completed his term of incarceration?” Such a trial lacks the requisite bases for subject matter jurisdiction — an immediate consequence and not a speculative or hypothetical determination. Moreover, it also undermines the requirement of article 10 itself — which is to identify offenders who may be subject to the civil management provisions of article 10 by a current evaluation of those persons’ mental conditions at the time that civil management is required, that is, when such offenders are about to be released from incarceration or detention into the community.
Finally, conducting such a trial at this point — when respondent will be incarcerated for at least two more years — utilizes valuable governmental resources and adds unwarranted costs to *390 an already costly civil management scheme. (See Charles Patrick Ewing, Justice Perverted, Sex Offense Law, Psychology, and Public Policy, at 58-60 [Oxford University Press 2011] [cost of simply confining and treating civilly committed sex offenders in New York is estimated to reach $100 million by 2012; additional state agency costs — Department of Correctional Services, Division of Parole, Department of Law, Office of Court Administration and Mental Hygiene Legal Service — will increase the costs associated with the civil management statute to approximately $200 million per year by 2012].)
Indeed, even if a jury were to determine today that respondent now suffers from a mental abnormality, his mental condition still would have to be reexamined in 2013 (and possibly 2012 as well) to determine if he still suffers from such mental abnormality when he could be subject to civil management. (Mental Hygiene Law § 10.09.)
(1) No Immediate Consequence
There can be no immediate consequence to any determination today that respondent is a detained sex offender who now suffers from a mental abnormality. (K.S. at 11.) Such a jury determination is the condition precedent to granting the relief sought by petitioner — to civilly manage respondent pursuant to article 10 either through detention in a secure facility or through strict and intensive supervision, neither of which is possible at this time. (Mental Hygiene Law § 10.07 [f]; K.S. at 9-10.)
Respondent is currently incarcerated and may be neither civilly committed nor subjected to SIST at this time. (See e.g. K.S. at 3 [civil management unavailable when respondent is serving penal sentence in another state]; State of New York v S.O., Sup Ct, Westchester County, Mar. 22, 2010, index No. 17387-08 [SIST applies only to those who are not incarcerated or civilly confined as dangerous sex offenders].)
As a determination today as to whether respondent has a mental abnormality requiring civil management can have no immediate consequence, the court is divested of subject matter jurisdiction and the case must be dismissed.
(2) The Claim is Now Speculative and Hypothetical
No subject matter jurisdiction exists when the relief sought is only speculative and hypothetical. (Church of St. Paul & St. Andrew v Barwick, 67 NY2d 510, 518 [1986] [proceeding not ripe unless there is a “real and present” problem, rather than one which is abstract, hypothetical or remote]; Bianco v Sciaulino, 26 Misc 3d 780, 781 [Civ Ct, NY County 2009].)
*391 There are now more than two years remaining before respondent may be released from prison into the community. In that time, a number of events may occur which could obviate the need for confinement or SIST of respondent; it is simply too speculative to know. (Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo, 64 NY2d 233, 240-241 n 3 [1984] [if harm sought to be enjoined is contingent upon events which may not come to pass, claim is too speculative and abstract].)
For example, two years from now respondent may not have any mental abnormality; even if he has a mental abnormality today, he may not have one at the time of his release from prison. (See Matter of Rhodanna C.B., 36 AD3d 106, 110-111 [2d Dept 2006] [mental condition is not fixed]; K.S. at 9-10.)[10]
Or, in two years time, respondent may have completed a sex offender treatment program in prison,* [11] which could obviate the need altogether for any civil confinement of respondent upon his release from incarceration into the community. Or, at the very least, any participation, or nonparticipation, in a sex offender treatment program by respondent in the next two years certainly would be a relevant factor in a civil management proceeding. (S.O. at 4; see also Mental Hygiene Law § 10.05 [c] [5]; § 10.08 [b]; Matter of State of New York v Derrick B., 68 AD3d 1124, 1127 [2d Dept 2009] [sex offender treatment participation is one factor to be taken into account in determining if person is a “dangerous sex offender” requiring civil management].)
Indeed, the number of things that could happen in the more than two years that respondent will be incarcerated — he could commit another crime while incarcerated and serve even more time in prison, he could die or suffer an illness or disability that could minimize or eliminate his risk of reoffending — make any current determination of respondent’s mental abnormality even more remote from the requisite consequence to such determination — civil management.
*392 Thus, the speculative and hypothetical nature of the State’s claim at this point in time, years before respondent might be released from state custody, renders this petition moot.
(3) Delaying the Dispositional Phase of the Proceeding Will Not Confer Subject Matter Jurisdiction and Violates the Intent of Article 10
Adjudicating respondent’s mental condition, to wit, determining if he should be subject to the article 10 civil management scheme, and then adjourning the disposition as to the level of civil management — whether respondent should be confined or released subject to strict and intensive supervision — for two years until respondent is about to be released from prison, presumably in 2013, subverts the purposes of the statute and would not vest the court with subject matter jurisdiction now where it does not exist.
Article 10 requires that the current mental condition of the respondent be evaluated by a jury to determine whether such person is subject to civil management and that such determination be made at or very near the time the offender will be released from detention or incarceration to the community. (Rashid, 16 NY3d at 17 [article 10 is intended to deal with civil management of mentally ill sex offenders completing their prison terms]; K.S. at 9.) Indeed, the two stated goals of Mental Hygiene Law article 10 — the need for continuing treatment for a mental abnormality and protection of the public — can only be effectuated when release of a sex offender is imminent. (Mental Hygiene Law § 10.01 [a], [d], [e]; K.S. at 9.) Such goals are not relevant when, in this case, the offender is still incarcerated and no threat to the public. (S.O. at 3-4; K.S. at 9.)
The statute (and the Supreme Court [see section V (C), infra]) requires that the mental condition determination be current. Thus, any determination now as to whether respondent suffers from mental abnormality, years before he may be released from prison, is speculative and hypothetical. Indeed, respondent’s status as a sex offender with a mental abnormality might be different at the time of his release, particularly if he were to take advantage of sex offender treatment programs in prison. (K.S. at 9, citing Derrick B., 68 AD3d at 1127 [one factor in determining whether an individual is a “dangerous sex offender requiring civil management” is whether he benefitted from sex offender treatment during his incarceration].)
Moreover, article 10 also provides a civilly confined sex offender the right to petition the court annually for discharge, *393 which discharge will be granted upon a showing that the individual no longer remains a dangerous sex offender requiring confinement. (Mental Hygiene Law § 10.09 [a], [d].)
Thus, a trial today as to respondent’s mental condition could add two more judicial proceedings in which respondent’s mental status would be assessed during the next two years that he is penally confined. (Mental Hygiene Law § 10.09.) Such a situation, in the current economic climate, when this country faces the worst recessionary period since the Great Depression, and the court system, along with all other government services and agencies, face budgetary cuts and increased costs, is unduly wasteful.[12] Thus, judicial economy also dictates that a civil management proceeding occur only when the offender is about to be released from either detention, incarceration or supervision back into the community. (People v Williams, 21 Misc 3d 1118[A], 2008 NY Slip Op 52097[U], *7 [Crim Ct, Kings County 2008] [accusatory instrument dismissed because defendant was already institutionalized; belabored prosecution of case serves no legitimate purpose and drains court system and city’s resources]; People v Payne, 2002 NY Slip Op 50293[U], *4-5 [Mount Vernon City Ct 2002] [court refused to appropriate extensive resources to trial where little or no benefit would ensue to People].)
There also is no authority in article 10 to adjourn the dispositional phase of the trial for such a length of time. Section 10.07 (f) provides:
“If the jury, or the court if a jury trial is waived, determines that the respondent is a detained sex offender who suffers from a mental abnormality, then the court shall consider whether the respondent is a dangerous sex offender requiring confinement or a sex offender requiring strict and intensive supervision. The parties may offer additional evidence, and the court shall hear argument, as to that issue.” (Emphasis added.)
*394 There simply is no statutory basis to adjourn the disposition of the trial — the level of civil management to which respondent would be subject (if found to have a mental abnormality) which is the relief sought by petitioner — to some unknown date in the future.
Indeed, delaying the dispositional phase of the civil management proceeding has already been rejected in 2010 in a proceeding where a court released an inmate to the custody of Pennsylvania to serve prison time in that state rather than allow an article 10 proceeding to go forward against that same inmate in New York. (K.S. at 9.)
In that case, K.S. had served his criminal sentence for a sex crime in New York and was due to be sent, upon completion of his New York sentence, to Pennsylvania to begin serving a 10-to-20-year sentence for a crime in that state. (K.S. at 9.) Just prior to the transfer to Pennsylvania, however, an article 10 petition was filed against K.S. (Id.)
There, the court granted a writ of habeas corpus directing the immediate release of K.S. from DOCS to Pennsylvania authorities, finding that the goals of article 10 were not served by holding a trial as to “mental abnormality” and adjourning (for up to 20 years) the dispositional portion of the proceeding. (Id. at 9-11.)
In K.S., the court found that the intent of article 10 mandates that the determination of whether a person is a detained sex offender now suffering from a mental abnormality must be made at or very near the time that person will be released from incarceration, not years before. (Id. at 9.)
The court expressly rejected an argument that the determination of whether K.S. now suffers from a mental abnormality requiring civil management could be made before he was sent to Pennsylvania and then, years later, when he was nearing release from prison in 10 to 20 years, the determination as to the level of civil management (civil confinement or strict and intensive supervision) could be made. (Id. at 10-11.)
For all these same reasons, this court rejects that argument in this case. The determination of whether respondent should be subject to civil management hinges on a finding of his current mental condition. The statute seeks to ensure that recidivist sex offenders are not released into the community without appropriate management. (Mental Hygiene Law § 10.01 [b], [c]; Rashid, 16 NY3d at 5-6.) Mental abnormality pursuant to article 10 may not be adjudged today, while the level of consequences of that determination is decided at a date far in the future.
*395 Thus, adjudicating mental abnormality today and then delaying any disposition cannot save this claim from lack of subject matter jurisdiction. Moreover, such a procedure would undermine the intent of article 10 and is unsupported in law.[13]
(4) The Statutory Language “Nearing an Anticipated Release” is Irrelevant to the Issue of Subject Matter Jurisdiction
The notice requirements of article 10, section 10.05 (b), which sets forth the process by which the Attorney General and the Commissioner of Mental Health are notified when an offender is nearing release from the agency that is confining, detaining or supervising him/her, are irrelevant to the issue of subject matter jurisdiction in this proceeding.
As noted above, this matter must be dismissed because subject matter jurisdiction disappeared when the respondent was sentenced to an additional period of incarceration such that there can be no immediate relief to a determination now of his mental condition and any such determination for relief in the future would be too hypothetical and speculative. Any reliance upon the notice provision regarding “nearing an anticipated release” in article 10 is misplaced.
“Nearing an anticipated release” in Mental Hygiene Law § 10.05 (b) specifically refers to the timing of the notice that is given to the Attorney General’s office and Office of Mental Health about an individual convicted of a sex offense.[14] Specifically, Mental Hygiene Law § 10.05 (b) provides, in relevant part:
*396 “When it appears . . . that a person who may be a detained sex offender is nearing an anticipated release, the agency shall give notice of that fact to the attorney general and to the commissioner of mental health. When the division of parole is the agency with jurisdiction, it may give such notice. The agency with jurisdiction shall seek to give such notice at least one hundred twenty days prior to the person’s anticipated release, but failure to give notice within such time period shall not affect the validity of such notice or any subsequent action, including the filing of a sex offender civil management petition.” (Emphasis added.)
The “nearing an anticipated release” language relates solely to the point at which the section 10.05 (b) notice must be given (or may be given, with respect to the Division of Parole) to the Attorney General and the Commissioner of Mental Health. (Matter of State of New York v Millard, 19 Misc 3d 283, 288 [Sup Ct, Broome County 2008] [“sole discernible purpose of (section 10.05 [b]) notice is to prompt the investigation and review process”]; People ex rel. David NN. v Hogan, 53 AD3d 841, 842-843 [3d Dept 2008] [detained person need only be in the custody of agency with jurisdiction and nearing release when the initial notice is given].)
Section 10.05 (b) prescribes a time period when an agency with jurisdiction should give that notice, and expressly provides that any failure to adhere to the time frame provided will not invalidate a subsequent petition. (Mental Hygiene Law § 10.05 [b] [“failure to give notice . . . shall not affect the validity of . . . the filing of a sex offender civil management petition”].)
Accordingly, that section of article 10 simply is a procedural provision regarding the timing of certain notice and is not relevant to the determination of subject matter jurisdiction in this case.
(5) Existing Case Law Indicates That the Petition Should be Dismissed at This Time
In addition to concurring with the court’s determination in K.S., this court has considered, among several, two other article 10 cases in finding that the instant petition must be dismissed.[15] The most recent case, People v Arroyo (27 Misc 3d 192 [Sup Ct, *397 Broome County 2010]), supports this court’s conclusion that subject matter jurisdiction in this matter now is deficient, and that article 10 requires a timely analysis of the respondent’s mental condition. The second case, a 2007 case decided when article 10 was in its infancy, Matter of State of New York v Swartz (18 Misc 3d 594 [2007]), is wholly inapposite to the facts of this case, and, for the reasons set forth below, its holding is inapplicable to these facts.
With respect to Arroyo, the court there, like the court here, held that an instant determination of the respondent’s mental condition and a hearing on the level of civil management was inappropriate when the respondent there was facing an additional two years’ incarceration. (27 Misc 3d at 194.)
There, even though the respondent in that case already had been adjudicated as having a mental abnormality and received a civil management disposition of SIST, the court held the new intervening period of incarceration of that respondent mandates that any new article 10 proceeding regarding the level of civil confinement, including any psychiatric evaluations, would have to occur when such respondent was released from that incarceration. (Id.)
In Arroyo, no subject matter jurisdictional defect existed because respondent in that case, Hector Arroyo, already had been adjudicated to be a “detained sex offender” subject to the strictures of article 10 civil management. (Id. at 193.) That is, both aspects of the article 10 hearing previously had been completed; the respondent already had been adjudicated to have a mental abnormality and the level of civil management appropriate for him had been determined to be SIST. (Id.)
The issue in Arroyo was that the respondent had violated the terms of his SIST and the State sought a higher level of civil management, to wit, civil confinement. However, that same SIST violation had triggered a parole violation and the respondent was incarcerated for two more years. (Id.)
When petitioner in that case sought a court order directing respondent to undergo a new psychiatric evaluation immediately *398 and the new article 10 hearing on the level of civil management delayed until respondent was nearing release from incarceration, the court held that both the evaluation and the hearing could not be held until respondent was released from incarceration. {Id. at 193-194.)
The court also ordered that the respondent be detained after his period of incarceration terminated so that he could be evaluated and that hearing could be held to determine whether the respondent should be civilly confined or remain subject to SIST after his incarceration. {Id. at 194.)
Notably, in concluding that a psychiatric evaluation and hearing while respondent was incarcerated on a parole violation was inappropriate, the Arroyo court noted that there could be no result from such a hearing, as respondent continued to be incarcerated. {Id. at 193-194.)
With respect to Matter of State of New York v Swartz, an article 10 petition was filed against the respondent in that matter on the same day that respondent was released from detention by the Office of Mental Health to DOP to begin his three-year term of postrelease supervision. (18 Misc 3d at 595-596.) In that case, unlike here, the respondent was being released into the community, albeit, under the postrelease supervision of DOP; he was not serving an additional period of incarceration.
Although Swartz is distinguishable from this case as the facts are entirely different — here, respondent will be incarcerated away from the community for at least two more years and is unable to be civilly managed either through civil confinement or SIST; there, the respondent was being released, albeit with supervision, into the community and thus could be civilly managed — the conclusions drawn by the court in Swartz are of concern to this court both in content and analysis.
In sum and substance, in that case, the court concluded that the civil management scheme of article 10 is not limited to those persons about to conclude their terms of incarceration or detention but is also applicable to persons who are released (or about to be released) into the community after such incarceration or detention to serve their terms of parole or postrelease supervision. (18 Misc 3d at 598.)[16]
*399 There, the court examined the language of article 10 and refused to dismiss the article 10 petition that was filed against the respondent for lack of subject matter jurisdiction, concluding that the absence of express language in the statute detailing the earliest date upon which an article 10 petition could be filed (or proceeding commenced) means no such prohibition exists and, thus, the court was vested with jurisdiction. (18 Misc 3d at 598.)
In drawing that conclusion, the court failed to examine the requirements of subject matter jurisdiction itself — ripeness, a justiciable controversy, immediacy of consequence (not hypothetical or speculative) — and cited no authority (other than the absence of express language in the statute) or legislative finding for finding subject matter jurisdiction in that case. (Id.)[17]
Unfortunately, the court misplaced emphasis upon and, indeed, misapprehended the statutory provisions which it cited and examined to sustain its finding of jurisdiction, finding Mental Hygiene Law, article 10, § 10.05 (b) to be the “most pertinent section of the statutory provisions” in that case (18 Mise 3d at 597), a provision that this court finds to be irrelevant to a subject matter jurisdiction analysis. (See section V [A] [4], supra.)
There, the court purported that that provision — section 10.05 (b) — which contains the language “nearing an anticipated release” — “address[es] the notice to a detained sex offender nearing anticipated release.” (18 Misc 3d at 597.) That is simply wrong. Although Mental Hygiene Law § 10.05 (b) does contain *400 the “nearing an anticipated release” language, the provision pertains only to the time frame pursuant to which an agency with jurisdiction over the person at issue should or may give notice of such anticipated release of that person to the Attorney General and the Commissioner of Mental Health. (Mental Hygiene Law § 10.05 [b].)[18] That specific provision contains no reference to any notice to be given to a respondent.[19]
Moreover, that court’s misplaced (and misapprehended) reliance upon a procedural notice requirement in the statute in its effort to ascertain subject matter jurisdiction or the intent of *401 article 10 with respect to its applicability to offenders released to the community on parole or postrelease supervision appears to have precluded that court from any examination of the legislative history of the statute to ascertain such purpose or intent.[20]
Nonetheless, as the facts and analysis of that case are inapposite to the court’s determination here, as well as for all of the other reasons discussed, respondent’s motion to dismiss for lack of subject matter jurisdiction pursuant to CPLR 3211 (a) (2) is granted.
B. The Petition Fails to State a Cause of Action as Respondent Needs No Civil Management during the Next Two Years while He is Incarcerated
A motion to dismiss for failure to state a cause of action must be granted when a cause of action no longer exists. (Sweeney v Sweeney, 71 AD3d 989, 991 [2d Dept 2010] [inquiry is whether the pleader has a cause of action — not whether it was properly stated in the pleading]; see also 6A Carmody-Wait 2d § 38:19.) A pleading which fails to comply with the minimal statutory requirement to state essential facts constituting material elements of a cause of action is legally insufficient and must be dismissed. (Queens County Bus. Alliance v New York Racing Assn., 98 AD2d 743, 744 [2d Dept 1983] [landowner’s action to enjoin another landowner from maintaining alleged public or private nuisance dismissed where plaintiffs failed to allege essential element of a private nuisance — an “interference with the use or enjoyment of land”].)
Pursuant to Mental Hygiene Law § 10.06 (a), an article 10 petition must contain a statement alleging facts “of an evidentiary character” tending to support the allegation that the respondent is a sex offender requiring civil management. In this case, there is no dispute that at the time the Attorney General filed the petition, the essential elements of a claim for civil management existed as to respondent. Respondent was incarcerated on a sex offense approaching the end of his incarceration, and a case could be made that he “requir[ed] civil manage *402 ment.” (Rashid, 16 NY3d at 16 [Legislature intended article 10 to deal with civil management of sex offenders who are completing their prison terms].)
However, the petition cannot survive merely because it sufficiently stated a claim at the time of filing. (Beltway Capital LLC v Soldi, 30 Misc 3d 1214[A], 2011 NY Slip Op 50064[U], *6 [Sup Ct, Kings County 2011].) A change in circumstances subsequent to the filing is relevant to the inquiry on a motion to dismiss for failure to state a claim. (Id.)
The article 10 petition in this case must be dismissed for failure to state a claim because the fact that respondent will now be incarcerated for more than two more years, until at least August 16, 2013, negates a material fact alleged in the petition — that respondent “requires civil management.”
The cause of action in this matter is premised upon the fact that respondent was expected to be released from incarceration (to the custody of DOP) on April 17, 2010. If that were still the case, and all other elements of the State’s cause of action were true, a cause of action then would exist because it could be said that respondent required civil management.
Article 10 defines a “sex offender requiring civil management” as a detained sex offender with a mental abnormality who either is “(1) a dangerous sex offender requiring confinement or (2) a sex offender requiring strict and intensive supervision.” (Mental Hygiene Law § 10.03 [q].) At this point in time, the State cannot prove either that respondent requires civil confinement or that respondent requires strict and intensive supervision. Indeed, as an incarcerated prisoner, respondent does not require civil confinement or strict and intensive supervision and will not need either in the near future (nor are they available to him). (S.O. at 3-4; K.S. at 9-11.)
As respondent’s pending incarceration for more than two more years negates an essential element of the State’s claim for civil management — that respondent requires civil management — this article 10 petition must be dismissed on this basis as well.
C. The Respondent’s Due Process Rights are Also at Issue
In light of the court’s dismissal of the petition on the foregoing grounds, the court need not reach the constitutional due process issues asserted by respondent.
Nonetheless, if this court were to reach the issue, the matter also would have to be dismissed because any determination that *403 respondent is a sex offender in need of civil management years before he can be either civilly confined or released subject to SIST violates respondent’s due process rights under both the State and Federal Constitutions.
“(D)ue process is flexible and calls for such procedural protections as the particular situation demands.” (Mathews v Eldridge, 424 US 319, 334 [1976], quoting Morrissey v Brewer, 408 US 471, 481 [1972].)
A due process analysis requires consideration of three distinct factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. (Mathews, 424 US at 335, citing Goldberg v Kelly, 397 US 254, 263-271 [1970].)
The private interest in this article 10 petition is compelling— civil management under article 10 is a significant deprivation of an individual’s liberty interests. (Kansas v Hendricks, 521 US 346, 356 [1997]; Mental Hygiene Legal Serv. v Spitzer, 2007 WL 4115936, *4-5, 2007 US Dist LEXIS 85163, *12-18 [SD NY 2007, 07 Civ 2935].)
The Supreme Court has held that civil commitment must be based upon a finding of “current mental illness and dangerousness.” (Foucha v Louisiana, 504 US 71, 78 [1992].) Since respondent’s mental condition may be different today than it will be at the time he is released from prison, a greater risk exists that respondent will be improperly subject to civil management — and his liberty interest compromised — based on a stale finding that he suffers from a mental abnormality.
The State’s interest in having a determination made today as to whether respondent is a detained sex offender subject to civil management in the future is a far less compelling interest. The respondent already is confined in a state prison, so the State’s interest in protecting the public is not at issue, nor is the State’s interest in ensuring that sex offenders receive treatment, as such treatment already is available to such persons, including respondent, in prison.[21] Moreover, the State’s fiscal interests would be served by a dismissal of the petition, as noted in section V (A) (3) (supra), as there are significant economic benefits *404 to requiring that the proceeding occur in temporal proximity to when respondent will be released from incarceration and, in fact, could be civilly managed.
For these reasons, if the court were to reach this issue, respondent’s motion to dismiss the article 10 petition on the grounds that it is unconstitutional likewise would be granted.
D. There is No Basis for a Summary Determination Pursuant to CPLR 409 (b)
Respondent also contends that there are no triable issues of fact on the petition and urges this court to grant a summary determination of the petition.
As the court has determined that the petition will be dismissed on other grounds, it need not reach this issue. However, if it were to reach this issue, it does not appear that summary judgment would be appropriate.
VI. Conclusion
For all of the reasons set forth above, the article 10 petition against respondent is dismissed, without prejudice.

. “Mental abnormality” is defined as a congenital or acquired condition, disease or disorder which affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and results in that person having serious difficulty in controlling such conduct. (Mental Hygiene Law § 10.03 [i].)

. An- “agency with jurisdiction” is defined as DOCS, the OMH, DOT or the Office for Persons With Developmental Disabilities. (Mental Hygiene Law § 10.03 [a].)

. This notice is mandatory, except in the case of the Division of Parole, which “may” give notice. (Mental Hygiene Law § 10.05 [b]; Matter of State of New York v Millard, 19 Misc 3d 283, 287 [Sup Ct, Broome County 2008].)

. Pursuant to Penal Law § 130.91, which was enacted as part of the SOMTA statute and applies to crimes committed on or after April 13, 2007, a sexually motivated felony is defined as certain designated felony offenses, such *385 as assault, gang assault, burglary, or robbery, among others, if such crime is committed “for the purpose, in whole or substantial part, of. . . direct sexual gratification.” (Penal Law § 130.91 [1].)

. This court has set forth a detailed discussion of the legislative intent of SOMTA, as well as the findings and fallacies of the Legislature with respect to recidivism and treatment, in a decision in another mental hygiene case earlier this year. (See State of New York v Robert V., 31 Misc 3d 1210 [A], 2011 NY Slip Op 50552[U] [Sup Ct, Bronx County, Apr. 11, 2011].)

. As set forth further in section V (A) (4) (infra), the language in Mental Hygiene Law § 10.05 (b), “nearing an anticipated release,” is irrelevant to the issues here. That provision simply sets forth a procedural timetable as to when the Attorney General and the Commissioner of Mental Health need to be alerted about an individual who may be subject to the civil management strictures of article 10. It is not a condition precedent to the filing of a petition. (Mental Hygiene Law § 10.05 [b] [“failure to give notice within such time period shall not affect the validity of such notice or any subsequent action, including the filing of a sex offender civil management petition”].)

. The “capable of repetition yet evading review” exception to the mootness doctrine, generally applied by appellate courts, is inapplicable here. That exception requires three factors: (1) a likelihood of repetition, either between the parties or among other members of the public; (2) a phenomenon typically evading review; and (3) a showing of significant or important questions not previously passed on, i.e., substantial and novel issues. (.Matter ofHearst Corp. v Clyne, 50 NY2d 707, 714-715 [1980].) All three factors do not exist here. While there is certainly a likelihood that this issue will recur as numerous sex offenders may violate parole and be sent back to DOCS custody, the article 10 issue will not evade review, as it may be determined at a later date when respondent nears release from custody.
This mootness exception may be applicable in a case where a defendant is convicted of a non-sex offense while incarcerated or on parole for a sex offense and the term of imprisonment for that non-sex offense extends well past that defendant’s term of imprisonment, parole, and/or postrelease supervision for the sex offense. Such a situation would meet all three prongs of the exception: (1) it is capable of repetition as it is not uncommon for defendants to incur additional criminal charges either in prison or while on parole; (2) article 10 review would be evaded because the State cannot initiate article 10 proceedings against someone who is not either incarcerated, detained or supervised in connection with a sex offense; and (3) the important question of whether the *388 defendant should be subject to civil management (after his sentence) either via civil commitment or strict and intensive supervision would not be able to be reached.
However, this is not that case. Here, respondent has been reincarcerated on the same sex offense for which he previously had been incarcerated and for which offense the State filed this petition. The State still will be able to pursue a new article 10 proceeding against respondent when he actually could be civilly managed, to wit, in temporal proximity to the end of his term of incarceration for this parole violation. (Mental Hygiene Law § 10.06.)

. The cases cited by the Attorney General where alleged defects in prefiling statutory requirements did not require dismissal of the proceeding are inapposite to this case. In each case, the defects and proposed corrections at issue did not impair jurisdiction. (Matter of State of New York v DJ, 23 Misc 3d 612 [Sup Ct, Bronx County 2009] [change in agency with jurisdiction between time notice of article 10 proceeding given and petition filed held not to be a procedural defect]; People ex rel. David NN. v Hogan, 53 AD3d 841 [3d Dept 2008] [as long as section 10.05 (b) notice is given by the appropriate agency with jurisdiction when respondent is nearing an anticipated release, fact that respondent is released to DOP supervision before the petition is filed is of no consequence]; Matter of State of New York v Millard, 19 Misc 3d 283 [Sup Ct, Broome County 2008] [as respondent was in custody of OMH when article 10 proceeding was commenced, and received notice — albeit not written notice — fact that he was, or should have been, released to DOP at the time petition was filed did not negate jurisdiction].)

. Contrary to the Attorney General’s assertion, ripeness is not only determined at the time the petition is filed. In fact, the court must be informed of changed circumstances which render a matter moot. (Matter of Cerniglia v Ambach, 145 AD2d 893, 894 [3d Dept 1988], citing Clerk of the New York Court of Appeals, Notice to the Bar [July 18, 1988], NYLJ, July 19, 1988, at 1, col 1.)

. The New York State Legislature recognized this fact when it enacted article 10 and provided that a civilly confined sex offender has the right to petition the court annually for discharge, which will be granted upon a showing that the individual no longer remains a dangerous sex offender requiring confinement. (Mental Hygiene Law § 10.09 [a], [d].)

. Sex offender treatment programs are now statutorily mandated to be offered to prisoners convicted of sex offenses while they are incarcerated. (See Correction Law § 622.)

. The court notes that, in addition to the court itself, a court reporter, a court clerk, numerous court officers, attorneys from the Attorney General’s office and Mental Hygiene Legal Service, as well as mental health expert professionals, and personnel from DOCS who would have to transport the respondent to such proceedings, would be required for such hearings. In a state and county so sorely in need of these judicial, professional and administrative resources, these costs should not be ignored. (Charles Patrick Ewing, Justice Perverted, Sex Offense Law, Psychology, and Public Policy, at 58-60 [Oxford University Press 2011].)

. Although there is no “bright line” that this court can draw to determine how lengthy a period of subsequent detention or incarceration need be to divest a court of article 10 jurisdiction, it is obvious from the facts of this case that no subject matter jurisdiction now exists as the relief sought — civil confinement — is not available now or in the near future. Of course, that does not mean that a case could not exist where a subsequent period of detention or incarceration of a respondent after the filing of an article 10 petition is of such short duration that subject matter jurisdiction is not divested. Indeed, earlier this year, while this matter was pending, respondent was incarcerated for 15 days on a conviction of harassment in the second degree (Penal Law § 240.26). That did not divest this court of article 10 subject matter jurisdiction as that time period was de minimis and did not affect respondent’s eligibility for civil management. That is not the case now.

. The court notes that the court in Matter of State of New York v Swartz (18 Misc 3d 594, 597 [Sup Ct, Chenango County 2007]) erroneously identified section 10.05 (b) as a statutory provision “addressing the notice to a detained sex offender nearing anticipated release.” That is simply wrong. The notice pursuant to that section is not to the offender; rather it is to the Attorney General and the Commissioner of Mental Health to alert those officials that such person is nearing his/her anticipated release. (Mental Hygiene Law § 10.05 [b].) As set forth further herein, in section V (A) (5), this decision also *396 addresses other misconceptions about article 10 underlying the decision in that case.

. Another case, decided by the Court of Appeals in 2010, Matter of State of New York v Rashid (16 NY3d 1), also is instructive. There, an article 10 pe *397 tition was not filed until after parole supervision had ended, and the petition was deemed invalid. The Court of Appeals held that article 10 requires that a sex offender civil management petition be filed while a respondent is in state custody or still subject to state supervision. (Id. at 16-17.) In its decision, the Court distinguished Millard and David NN, pointing out that, in those cases, the sex offenders, recently released from OMH custody, were subject to parole supervision when the Attorney General filed the article 10 petitions against them. (Id. at 15 n 10.)

. In Swartz the court held that, as the respondent was in the custody of OMH at the time the Mental Hygiene Law § 10.05 (b) notice was required, and it was properly made, respondent’s subsequent release to the DOP before the petition was filed did not invalidate the petition. (Id. at 597-598.)

. Although this court agrees with the Swartz court that subject matter jurisdiction existed in that case, as, pursuant to those facts, an appropriate subject matter jurisdiction analysis would have shown ripeness and the availability of an immediate consequence — respondent in that case was available to be civilly managed (see section V [A] [1], [2], supra), this court takes issue as to how that court arrived at that conclusion.
It appears the court did not apprehend the import of permitting that article 10 petition to proceed against a respondent who was just starting his term of parole supervision in the community with respect to subject matter jurisdiction. The manifest difference between the nature of incarceration and supervisory release back to the community on parole is a distinction that results in a finding of no subject matter jurisdiction in this instant matter, when an article 10 petition is filed against a person commencing a period of imprisonment, but the existence of subject matter jurisdiction when an article 10 petition is filed against a person who is commencing his period of supervised release into the community (Swartz). Although the results are disparate with respect to the existence of subject matter jurisdiction, each outcome comports with the statutory framework of article 10 and supports its dual purposes of protection of the public and treatment of sex offenders.

. The provisions that do pertain to notice to a respondent — Mental Hygiene Law § 10.05 (e), (f) and (g) — pertain to the notice to be given to a respondent if such person is referred to a case review team for evaluation (§ 10.05 [e]) and the notice to be given if such person is not determined by a case review team to be a sex offender requiring civil management (§ 10.05 [f]) and notice if such person is determined by a case review team to be a sex offender (§ 10.05 [g]). None of those provisions contain the language “nearing an anticipated release.” Mental Hygiene Law § 10.05 (g) does require that written notice by the case review team to respondent (and the Attorney General) must occur within 45 days of the Commissioner having received the notice pursuant to section 10.05 (b). All of these provisions are procedural and expressly provide that they do not affect the filing of an article 10 petition with the court (§ 10.05 [g]).

. The court in Swartz also misapprehended the authority provided in article 10 to an “agency with jurisdiction,” erroneously contending that such agencies are empowered by that statute to commence an article 10 proceeding. (See 18 Mise 3d at 596 [“the Office of Mental Health or the Division of Parole, either of which is statutorily empowered to commence a proceeding pursuant to Mental Hygiene Law § 10.03 (a)”].)
The court is wrong. First, pursuant to article 10, the Attorney General is the only entity authorized to commence an article 10 proceeding. (See Mental Hygiene Law § 10.06 [a]; § 10.05 [g].) Second, the provision cited by that court, Mental Hygiene Law § 10.03 (a), confers no authority on any agency to “commence a proceeding.” That provision is definitional only; it simply names those entities which are responsible for supervising or releasing a person who may be the subject of such an article 10 proceeding and identifies such entity as an “agency with jurisdiction.” (Mental Hygiene Law § 10.03 [a].) Moreover, as noted earlier, contrary to that court’s erroneous reference to Mental Hygiene Law § 10.05 (b), an agency with jurisdiction has no authority to “commence[ ] ... an article 10 proceeding” under any provision of the statute (18 Mise 3d at 597-598); rather, any such agency may have a duty to report such a person’s anticipated release (and other relevant information) to the Attorney General or the Commissioner of Mental Health. (Mental Hygiene Law § 10.05 [b].) (Those notice provisions expressly state that failure to timely provide such notice will not affect the validity of the filing of an article 10 petition.) Finally, although the Commissioner of Mental Health is authorized to create a case review panel (see Mental Hygiene Law § 10.05 [a]) to review inmate cases to determine if an inmate should be referred to the Attorney General’s office for the filing of an article 10 petition against him/her, the statute does not authorize that Commissioner to commence such filing. (Id.)

. Ironically, the Swartz court observed that “[o]missions in a statute cannot be supplied by construction” (18 Misc 3d at 598, citing Eastern Paralyzed Veterans Assn. v Metropolitan Transp. Auth., 79 AD2d 516 [1980]), yet somehow found that it had subject matter jurisdiction over that proceeding because of the omission of any provision in article 10 setting forth a specific timetable for the filing of a civil management sex offender petition.

. See footnote 11, supra.